```
 1                    IN THE UNITED STATES DISTRICT COURT
 2                      FOR THE DISTRICT OF NEBRASKA
 3
 4       _____
 5       UNITED STATES OF AMERICA,       )      4:04CR3044
 6                                       )      November 16, 2004
 7                      Plaintiff,       )      1:31 p.m.
 8                                       )      Lincoln, Nebraska
 9       vs.                             )
10                                       )
11       TRAVIS L. HARDESTY,             )
12                                       )
13                      Defendant.       )
14       _____)
15
16
17                    TRANSCRIPT OF PLEA HEARING
18               BEFORE THE HONORABLE DAVID L. PIESTER,
19                  UNITED STATES MAGISTRATE JUDGE
20
21
22                    A-P-P-E-A-R-A-N-C-E-S:
23
24       FOR THE PLAINTIFF:          MS. JANICE M. LIPOVSKY
25                                   Assistant U.S. Attorney
26                                   100 Centennial Mall North
27                                   Suite 487, Federal Building
28                                   Lincoln, NE  68508-3865
29
30       FOR THE DEFENDANT:          MR. SEAN J. BRENNAN
31                                   Attorney at Law
32                                   140 North 8th Street
33                                   Suite 340, The Apothecary
34                                   Lincoln, NE  68508
35
36       TRANSCRIBER:                WENDY C. CUTTING
37                                   General Reporting Service
38                                   304 South 13th Street
39                                   Lincoln, NE  68508
40
41                                   - - -
42
43       Proceedings recorded by electronic sound recording, transcript
44       produced by transcription service.
45
46
```

1                    (Tuesday, November 16, 2004, at 1:31 p.m.)

2                    THE COURT:  Ms. Lipovsky.

3                    MS. LIPOVSKY:  Thank you, Your Honor.  This is the

4          case of United States of America v. Travis L. Hardesty, found

5          at 4:04CR3044.  I'd like the record to reflect my presence

6          today for the United States.  Mr. Hardesty is present with his

7          counsel.  We are here for entry of a plea of guilty.  I believe

8          the Court has the original petition and the Plea Agreement.

9                    THE COURT:  I do.  Mr. Brennan, is that correct?

10                   MR. BRENNAN:  That is correct, Your Honor.

11                   THE COURT:  Mr. Hardesty, I want to remind you that

12         you have the right to proceed in this kind of a hearing, the

13         taking of a guilty plea, before a United States District Judge.

14         You may also waive that right and consent to proceed before me,

15         a United States Magistrate Judge.  I've been told that you wish

16         to proceed before me, is that correct?

17                   THE DEFENDANT:  Yes.

18                   THE COURT:  Has anybody threatened you with harm or

19         promised you anything in order to get you to consent to proceed

20         before me?

21                   THE DEFENDANT:  No.

22                   THE COURT:  Do you do so freely and voluntarily?

23                   THE DEFENDANT:  Yes.

24                   THE COURT:  All right, I'll accept the consent.

25                   Ms. Lipovsky, go ahead with the rearraignment.

1          MS. LIPOVSKY:  Thank you, Your Honor.  Again, Mr.

2     Hardesty, the indictment in this case has one count that

3     alleges that between on or about January 1st of 2001, and on or

4     about January 1st of 2004, in the District of Nebraska and

5     elsewhere, you did knowingly and intentionally combine,

6     conspire, confederate and agree with other persons to

7     distribute and possess with intent to distribute 500 grams or

8     more of a mixture or substance containing a detectable amount

9     of methamphetamine, its salts, isomers or salts of its isomers,

10    a Schedule II controlled substance, in violation of Title 21 of

11    U.S.C. §§ 841(a)(1) and (b)(1)(B), in violation of Title 21 of

12    U.S.C. § 846.  The charge is conspiracy to distribute 500 grams

13    or more of methamphetamine.  The possible penalty is no less

14    than ten years in prison to a maximum of life imprisonment,

15    and/or a fine of up to $4 million.  There's a $100 special

16    assessment fee, and if you are sentenced to a term of

17    imprisonment, after you have completed it, you would then be

18    subject to a period of supervised release of not less than five

19    years.

20         Do you understand the charges in the indictment?

21              THE DEFENDANT:  Yes.

22              MS. LIPOVSKY:  Do you understand the possible

23    penalty?

24              THE DEFENDANT:  Yes.

25              MS. LIPOVSKY:  Do you believe you've had sufficient

4

1          time to discuss this with your attorney so that you can enter a

2          plea here today?

3                              THE DEFENDANT:  Yes.

4                              MS. LIPOVSKY:  And how do you now wish to plead to

5          Count I of the indictment?

6                              THE DEFENDANT:  Guilty.

7                              THE COURT:  Sir, before the Court can accept your

8          guilty plea, we have to make sure it is knowing and

9          intelligent, that is, that you know what you're doing and the

10         rights you're giving up and the consequences.  Also that it's

11         voluntary and also that there is a factual basis for it.  The

12         way we do that is to place you under oath and ask you many of

13         these same questions that are on this Petition to Enter a Plea

14         of Guilty.  So, if you'll stand and raise your right hand, I'll

15         have the clerk administer the oath to you.

16                         TRAVIS L. HARDESTY, DEFENDANT, SWORN

17                              THE COURT:  You may be seated.  Now that you're under

18         oath, you must tell the truth.  If you don't, that could be the

19         basis of a federal perjury charge being filed against you.

20                                        EXAMINATION

21         BY THE COURT:

22         Q.    Before I go further, have you had, in the last 24 hours,

23         any drugs or alcohol?

24         A.    No.

25         Q.    Are you taking any medication?

Travis Hardesty, Examination                                                5

1     A.    No.

2     Q.    Are you seeing a doctor for anything?

3     A.    No.

4     Q.    Are you feeling okay and thinking clearly?

5     A.    Yes, sir.

6     Q.    The petition indicates that you signed it a couple of

7     weeks ago.  Were you and Mr. Brennan together when you went

8     through it?

9     A.    Yes, sir.

10    Q.    Did he explain to you the meaning of the questions?

11    A.    Yeah.

12    Q.    Did you understand the questions?

13    A.    Yes.

14    Q.    And are all of your answers true?

15    A.    Yes.

16    Q.    As I say, I'll ask you many of them all over again here

17    today, so if, at any time in this discussion, you have

18    additional questions that come to mind that you want to talk

19    about with Mr. Brennan, simply interrupt me and tell me that.

20    I'll give you the opportunity to confer.

21          The petition indicates you're 25 years old.  You've got a

22    high school education.  You had the one episode of treatment at

23    the Salvation Army Treatment Center.  Is there anything about

24    that treatment that affects your ability to go forward here

25    today?

Travis Hardesty, Examination                                        6

1    A.    No.
2    Q.    Mr. Brennan has been representing you.  Has he explained
3    to you the law and the procedures that apply in the case?
4    A.    Yes.
5    Q.    Has he investigated the case to your satisfaction?
6    A.    Yes.
7    Q.    Has he answered all your questions about the case?
8    A.    Yes.
9    Q.    Is there anything about his representation of you that you
10   are not satisfied with?
11   A.    No.
12   Q.    As you know, you waive a number of constitutional rights
13   when you enter a guilty plea to a felony offense and thereby
14   have a felony conviction.  And I want to go over those with
15   you.  You must know that you have the right to plead not guilty
16   and to require the Government to prove its case against you in
17   court.  Do you understand that?
18   A.    Yes, sir.
19   Q.    If you did that, you would have the right to a speedy and
20   a public trial before a jury of twelve persons selected from
21   your peers.  Do you understand that?
22   A.    Yes.
23   Q.    You'd also have the right to be represented by counsel at
24   all stages of the case, and if you couldn't afford to hire your
25   own attorney, then one would be appointed to represent you at

Travis Hardesty, Examination                                            7

1       no cost to you.  Do you understand that?

2       A.    Yes.

3       Q.    You'd also have the right to be present at the trial and

4       to see and hear every one of the witnesses that the Government

5       would bring to court to testify against you and, through your

6       attorney, to cross-examine them.  Do you understand that?

7       A.    Yes.

8       Q.    You'd also have the right to use the subpoena power of the

9       Court to force or compel the attendance and testimony of other

10      persons to be defense witnesses for you, as well as the

11      production of other evidence.  Do you understand that?

12      A.    Yes.

13      Q.    You'd also have the right to take the witness stand and

14      testify, or not, as you choose, and no one could force you to

15      take the witness stand and testify during the trial.  Do you

16      understand that?

17      A.    Yes.

18      Q.    And if you chose not to testify at the trial, that silence

19      could not be taken by the jury as evidence of guilt against

20      you.  Do you understand that?

21      A.    Yes.

22      Q.    Finally, you have the right to be presumed innocent.  What

23      that means is, you have the right to be found innocent unless

24      and until the Government proves each and every element of the

25      offense it charges you with beyond a reasonable doubt to the

Travis Hardesty, Examination                                        8

1    unanimous satisfaction of all twelve members of the jury.  Do
2    you understand that?
3    A.    Yes.
4    Q.    Now, if the Court accepts your guilty plea, you'll be
5    found guilty without any trial.  The case will move forward to
6    the sentencing phase and you will have given up all of those
7    constitutional rights except the right to counsel.  Do you
8    understand that?
9    A.    Yes.
10   Q.    There are, of course, consequences to your plea and your
11   conviction as a result of it.  The first, of course, is the
12   sentence.  Do you realize that in the event -- well, unless
13   there is some departure from sentencing guidelines or statutory
14   minimum sentence, as a result of your plea here today, you'll
15   be going to prison for at least ten years?
16   A.    Yes.
17   Q.    And do you realize it could also be as long as life in
18   prison?
19   A.    Yes.
20   Q.    There could also be a fine of up to $4 million.  There
21   would be, after any incarceration, a term of special -- excuse
22   me, supervised release of at least five years and a $100
23   special assessment.  Is that also your understanding?
24   A.    Yes.
25   Q.    There are other consequences.  You lose civil rights, the

Travis Hardesty, Examination                                         9

1     right to vote, hold public office, serve on a jury, and to

2     possess any kind of a firearm.  Do you understand that?

3     A.    Yes.

4     Q.    You could also be ineligible for certain loan or grant

5     programs funded by the Federal Government, as well as from

6     certain professional or commercial licenses.  Do you understand

7     that?

8     A.    Yes.

9     Q.    Are you now on probation or parole?

10    A.    No.

11              THE COURT:  And is there any restitution in this

12    case?

13              MS. LIPOVSKY:  No.

14    BY THE COURT:

15    Q.    Pleading guilty may not get you any benefit in sentence.

16    By that I mean, the judge can give you the same sentence if you

17    plead guilty or go to trial and are found guilty.  Do you

18    understand that?

19    A.    Yes.

20    Q.    Now, I'm going to ask you a number of questions that have

21    to do with the application of the sentencing guidelines.  As

22    you and your attorney have no doubt discussed, there is some

23    doubt as to whether, and if so, to what extent the sentencing

24    guidelines may apply to your case.  I'm going to ask you these

25    questions on the assumption that they will apply, and that way

Travis Hardesty, Examination                                    10

1    we will have covered it without a need to come back.

2        First, you should know that the sentencing guidelines are

3    an attempt by the Congress of the United States to equalize

4    sentences across the nation for the same or similar crimes.  On

5    one hand, they evaluate the seriousness of the crime.  On the

6    other hand, they evaluate the seriousness of any criminal

7    history the defendant may have, as well as the defendant's

8    involvement in the crime.  Those things are plotted on a grid

9    or a chart, and in that fashion, there is, then, developed a

10   range of sentences.  And the judge is required to sentence the

11   defendant within that range.  Is that your general

12   understanding of how they work?

13   A.   Yes.

14   Q.   Has anybody promised you that your case would be at any

15   particular place on that sentencing guideline chart?

16   A.   No.

17   Q.   That's good.  Ordinarily, it cannot be known, at this

18   point in a case, where someone will come out through this

19   sentencing process, because there are additional findings of

20   fact that have to be made between today and the date of

21   sentencing that could affect that.  So any discussions you've

22   had with your attorney or with anybody else about possible

23   sentences must be considered by you to be only estimates.  Do

24   you understand that?

25   A.   Yes.

Travis Hardesty, Examination                                    11

1    Q.    There are, of course, some things under the sentencing in

2    guidelines that could increase your sentence.  For example, if

3    you tell the probation officer who is preparing the presentence

4    report something that isn't true, that could increase your

5    sentence.  Likewise, if you had prior convictions in the last

6    15 years; if you committed this offense less than two years

7    after being released from prison; if you committed this offense

8    while you were on probation, or parole, or supervised release,

9    or escape status; or if you committed this offense as part of a

10   pattern of criminal conduct from which you got a substantial

11   portion of your income; and, since this is a drug case, if you

12   had two prior felony convictions for either crimes of violence

13   or drug trafficking, that could substantially increase your

14   sentence as a career offender.  Do you understand that any or

15   all of those factors, if they apply to you, could increase your

16   sentence?

17   A.    Yes.

18   Q.    In addition, if you cooperate with the Government and

19   provide to them what they say is substantial assistance, then

20   your sentence could be reduced under the guidelines as well.

21   Do you understand that?

22   A.    Yes.

23   Q.    Ordinarily, once the sentencing guideline range has been

24   determined, the judge is required to sentence the defendant

25   within that range, however, as you know, there are some

1    provisions which allow him to depart from that range either

2    downward or upward.  So, as we sit here today, there's no

3    assurance that your sentence will even be within the sentencing

4    guideline range.  Do you understand that?

5    A.   Yes.

6    Q.   You must know that if you are sentenced to a period of

7    imprisonment, you will serve all of that time in prison.  There

8    is no parole or early out in the federal system.  So your time

9    in custody will be reduced only by whatever good time you may

10   earn, if you earn it, up to 54 days a year.  Do you understand

11   that?

12   A.   Yes.

13   Q.   And then, following any period of incarceration there

14   would be supervised release.  Have you and your attorney talked

15   about that?

16   A.   Yes.

17   Q.   Essentially, you'd no longer be in custody, but you'd be

18   supervised by a probation officer, and you'd have to report to

19   that officer from time to time.  You would also have to abide

20   by certain conditions.  Those conditions can limit where you

21   live or work or travel.  You could be subject to search or drug

22   testing.  You could be required to participate in drug

23   treatment or other kinds of counseling.  There could be any

24   number of conditions along those lines.  Is that your general

25   understanding of supervised release?

1      A.   Yes.

2      Q.   You must know that if you violate any of the terms or

3      conditions of supervised release, then your supervised release

4      can be revoked and you can be required to serve all of that

5      time in prison.  Do you understand that?

6      A.   Yes.

7      Q.   And in addition, if you were to do something that was not

8      only a violation of your conditions of supervised release, but

9      also another crime, then, not only could you lose your

10     supervised release on this sentence, but you could also be

11     sentenced more harshly on that crime.  Do you understand that?

12     A.   Yes.

13              THE COURT:  Tell me about the Plea Agreement.

14              MS. LIPOVSKY:  Yes, Your Honor.  The Plea Agreement's

15     fairly standard.  It does include a clause where Mr. Hardesty

16     agrees he'll plead guilty to Count I of the indictment, that

17     the Government agrees to request the additional point for

18     acceptance of responsibility should the Probation Office and

19     the Court find that he has done so.  Also it includes a clause

20     wherein the defendant will not make any blanket objections to

21     the criminal history portion of his presentence report.  Also,

22     the parties agree neither side is entitled to an offense level

23     adjustment regarding role in the offense and that Mr. Hardesty

24     agrees he will not seek downward departure from the guideline

25     range for any other reason.

1       This is a cooperating plea agreement and so long as it is

2   in effect, his proffer statements are protected.  He has agreed

3   to provide whatever assistance is requested by law enforcement

4   or prosecuting individuals and has agreed to assist them in the

5   prosecution of other individuals, if requested, regarding

6   narcotics trafficking.  Any assistance that he provides will

7   then be evaluated by the U.S. Attorney for the District of

8   Nebraska in determining whether or not it has been of

9   substantial assistance.  And if it is determined by him that it

10  has been of substantial assistance, then the agreement sets out

11  that the United States would be requesting the Court to depart

12  downward from the guideline range, if his cooperation is

13  completed prior to sentencing, under the sentencing guidelines

14  § 5K1.1 and/or under U.S.C. 3553(e).  If his cooperation is not

15  completed until after that, it would be under a Rule 35(b)

16  motion.

17      And the Plea Agreement also sets out that the parties

18  agree, and Mr. Hardesty admits, that he is responsible beyond a

19  reasonable doubt for at least 1.5 kilograms, but less than five

20  kilograms of meth, which is a base offense level of 34.  He

21  also is aware that two additional points may be added to his

22  base offense level because of possession of a dangerous weapon.

23  And the Plea Agreement also includes a waiver of the right to

24  have a jury resolve the facts, any facts that would increase

25  his sentence and to have a jury deci- -- a judge, sorry, a

1    judge decide the facts relevant to sentencing by a

2    preponderance of the evidence.

3         And I think those are all of the, what I call high points

4    of the agreement.

5              THE COURT:  Mr. Brennan, is that your understanding

6    of the main points of the Plea Agreement?

7              MR. BRENNAN:  Yes, it is.

8    BY THE COURT:

9    Q.   Mr. Hardesty, is that your understanding?

10   A.   Yes.

11   Q.   Have you and Mr. Brennan gone over this Plea Agreement

12   letter paragraph by paragraph?

13   A.   Yes, sir.

14   Q.   Did he answer all of these questions about all of these

15   provisions?

16   A.   Yes.

17   Q.   Do you have any more questions about them now?

18   A.   No.

19   Q.   All right.  Tell me why you decided to make an agreement

20   with the Government.

21   A.   I want to accept responsibility and cooperate with the

22   Government.

23   Q.   All right.  You must know that as we sit here today, your

24   agreement is only between you and the Government.  It's not

25   binding on the Court.  Do you understand that?

1      A.    Yes.

2      Q.    Pardon me?

3      A.    Yes.

4      Q.    I will recommend to the sentencing judge that he accept

5      the Plea Agreement, but he might not accept it.  And if he

6      doesn't accept the Plea Agreement, you still might not be able

7      to withdraw your guilty plea.  Do you understand that?

8      A.    Yes.

9      Q.    You must also know that if you had taken this case to

10     trial, then the jury, of course, would be charged with the

11     responsibility of making determinations of fact that could lead

12     to a conviction, but also any determinations of fact that could

13     increase your sentence in any way.  And when the jury would

14     make those determinations, they would hold the Government to

15     the highest burden of proof we have in our system.  It's called

16     beyond a reasonable doubt.  By pleading guilty, you are

17     agreeing that not a jury, but a judge will make those

18     determinations of fact as it affects sentencing.  And when he

19     does so, he will hold the Government to a lower burden of proof

20     called preponderance of the evidence.  Is that your

21     understanding?

22     A.    Yes.

23     Q.    And knowing that, do you still wish to plead guilty?

24     A.    Yes.

25     Q.    You have signed what we have come to call the Blakely

Travis Hardesty, Examination                                        17

1          waiver in this case, because it arises from a case called
2          Blakely v. The State of Washington in the Supreme Court of the
3          United States, which has to do with these waivers.
4          Essentially, if I can capsulize it, it is simply that you are
5          waiving your right to challenge your sentence as far as the
6          sentencing guidelines being unconstitutional, challenging your
7          sentence or your conviction on the basis of any findings or
8          procedures used by the grand jury that indicted you, or also
9          any finding of fact that the judge makes without a jury and
10         that you're also agreeing that he can use the lower burden of
11         proof, preponderance of the evidence, instead of beyond a
12         reasonable doubt.  Is that your understanding of at least most
13         of the provisions of the Blakely waiver?
14         A.    Yes, sir.
15         Q.    Did you and Mr. Brennan go over this waiver here today,
16         again, paragraph by paragraph?
17         A.    Yes.
18         Q.    And do you have any additional questions about it now?
19         A.    No.
20         Q.    Do you understand it to your satisfaction?
21         A.    Yes.
22         Q.    Did you sign this waiver freely and voluntarily here
23         today?
24         A.    Yes.
25         Q.    Now, with regard to the provisions in the Plea Agreement

Travis Hardesty, Examination                                    18

1    that have to do with cooperation and a possible downward

2    departure motion, you must know that neither you, as the

3    defendant, nor the Court can force the Government to file that

4    motion for a downward departure in sentence.  Do you understand

5    that?

6    A.    Yes.

7    Q.    And even if they file it, there's no assurance the judge

8    is going to grant it.  Do you understand that?

9    A.    Yes.

10   Q.    And even if he grants it, he might not depart as far or as

11   much as you hoped or expected.  Do you understand that?

12   A.    Yes.

13   Q.    Now, other than this Plea Agreement, has anybody promised

14   you anything in order to get you to plead guilty?

15   A.    No.

16   Q.    Has anybody threatened you or anyone close to you with any

17   sort of harm in order to get you to plead guilty?

18   A.    No.

19   Q.    Has anybody told you that you would get a lenient sentence

20   by pleading guilty?

21   A.    No.

22   Q.    Has anybody told you exactly what your sentence is going

23   to be?

24   A.    Yes.

25   Q.    Who has told you that?

Travis Hardesty, Examination                                    19

1       A.   Or, no, I'm sorry.

2       Q.   All right.

3       A.   I'm sorry about that.

4       Q.   You'll have to explain that.  Has anybody told you exactly

5       what your sentence will be?

6       A.   No.

7       Q.   And I take it you've discussed with your attorney and

8       perhaps others, possible sentences, is that right?

9       A.   Yes, sir.

10      Q.   But I take it nobody's made a promise to you?

11      A.   Yeah.

12      Q.   That's correct, is it?

13      A.   No, that's -- or --

14      Q.   Let me ask it the other way.  I asked it the wrong way.

15      A.   I'm sorry.

16      Q.   Has anybody made a promise to you of a particular

17      sentence?

18      A.   No.

19      Q.   Okay.  Has anybody pressured you at all in order to get

20      you to plead guilty?

21      A.   No.

22      Q.   Are you pleading guilty for any reason other than what

23      we've talked about here today?

24      A.   No.

25           THE COURT:  Tell me about the factual basis.

Travis Hardesty, Examination                                    20

 1              MS. LIPOVSKY:  Yes, Your Honor.  A number of
 2     cooperating individuals came forward and provided information
 3     regarding Mr. Hardesty and trafficking, buying and selling of
 4     methamphetamine.  Their information covered the period from
 5     January of 2001 through January of 2004.  Some of these
 6     individuals had purchased methamphetamine from Mr. Hardesty in
 7     amounts that were as small as a half gram, and then to eight
 8     balls or one-eighth ounce to half ounce to an ounce.  Also,
 9     some of these people were individuals who had supplied Mr.
10     Hardesty.  For example, Christopher Ryan identified that he had
11     dealt with Mr. Hardesty from January to April of 2001, and
12     during that time he sold methamphetamine to Mr. Hardesty that
13     ranged from eight balls to half-ounce amounts which totalled a
14     minimum of 12 ounces or 340 grams, approximately.
15              Roger Vaughn also identified that he was involved with Mr.
16     Hardesty, in 2001 in methamphetamine, originally buying
17     methamphetamine from him, but then ultimately selling
18     methamphetamine to Mr. Hardesty.  Mr. Vaughn identified that he
19     sold a minimum of two to three pounds of methamphetamine to Mr.
20     Hardesty.  Two pounds would be approximately 907 grams.  Mr.
21     Vaughn was also with Mr. Hardesty when they would go to other
22     individuals' place -- other places to pick up methamphetamine.
23     For example, Vaughn went with Hardesty in May of 2002 to pick
24     up an ounce of methamphetamine, that they had to wait for it to
25     be finished, because it was being cooked.  Between November and

Travis Hardesty, Examination                                         21

1    December of 2003, Vaughn sold Mr. Hardesty yet another --
2    additional methamphetamine -- I'm sorry.  Let me rephrase that.
3    Mr. Vaughn saw Mr. Hardesty obtain additional methamphetamine
4    from a third source, and between 2001 and 2002, he also saw
5    Hardesty obtain methamphetamine from several other individuals
6    that would total approximately one-and-a-half pounds, which is
7    an additional 608 grams.
8        Ana Vaughn, who is the wife of Roger Vaughn, met Mr.
9    Hardesty through her husband, Roger, and she witnessed the
10   deals that were going on between the two of them.  And then Mr.
11   Vaughn dropped out of the picture and Ana Vaughn became
12   involved with Mr. Hardesty, and she began supplying Mr.
13   Hardesty methamphetamine, supplying him between November of
14   2002 and November of 2003, with 15 ounces, which would be a
15   little over 425 grams of methamphetamine.
16       The amount that's identified from cooperating individuals
17   is more than 1.5, but less than five kilograms of
18   methamphetamine.  These things occurred in Nebraska within the
19   time frame of the indictment.
20           THE COURT:  Mr. Brennan, do you agree that, if the
21   case were to go to trial, that information would be presented
22   to the jury?
23           MR. BRENNAN:  Yes, I do.
24           THE COURT:  Mr. Hardesty, do you agree?
25           THE DEFENDANT:  Yes.

Travis Hardesty, Examination                                              22

1               THE COURT:  Is that information true?

2               THE DEFENDANT:  Yes.

3                            EXAMINATION

4     BY THE COURT:

5     Q.   Tell me in your own words, what you did that makes you

6     guilty.

7     A.   I agreed with other people to obtain and distribute

8     methamphetamine.

9     Q.   Was that here in Nebraska?

10    A.   Yes, sir.

11    Q.   Was it at times between January 1st, 2001, and January

12    1st, 2004?

13    A.   Yes, sir.

14    Q.   Did you know that what you were dealing with was

15    methamphetamine?

16    A.   Yes.

17    Q.   Did you know that was illegal?

18    A.   Yes.

19    Q.   And was that in accordance with the arrangements that you

20    had made with these other individuals?

21    A.   Yes.

22    Q.   Do you also agree that you are responsible for at least

23    one-and-a-half kilograms, but less than five kilograms, of a

24    substance containing methamphetamine?

25    A.   Yes.

Travis Hardesty, Examination                                              23

1      Q.    I think we have gone over, at least, most of the petition
2      questions.  Has this discussion raised any other issues that
3      you want to talk over with your attorney or with me before
4      proceeding any further?
5      A.    No, sir.
6      Q.    Do you still want to plead guilty?
7      A.    Yes, sir.
8      Q.    Are you guilty?
9      A.    Yes.
10            THE COURT:  Ms. Lipovsky, do you have additional
11     questions that I should ask the defendant at this time?
12            MS. LIPOVSKY:  No, Your Honor.
13            THE COURT:  Mr. Brennan?
14            MR. BRENNAN:  No, Your Honor.
15            THE COURT:  Ms. Lipovsky, are you satisfied that the
16     plea is knowing and intelligent, that it's voluntarily entered
17     and that there's a factual basis for it?
18            MS. LIPOVSKY:  Yes, Your Honor.
19            THE COURT:  And Mr. Brennan, are you?
20            MR. BRENNAN:  Yes, I am.
21            THE COURT:  Mr. Hardesty, once more for the record,
22     how do you plead?
23            THE DEFENDANT:  Guilty.
24            THE COURT:  I find that the entry of the plea is
25     knowing and intelligent, that it's voluntarily entered and that

1          there's a factual basis for it.  I, therefore, am signing a

2          report and recommendation that the plea be accepted and the

3          Plea Agreement be accepted.  That is subject to objection

4          within ten days.  On the assumption that it will be accepted, I

5          am signing an order establishing the sentencing schedule in the

6          case.  Among other things, that sets the date for sentencing at

7          February 3rd, 2005, at 12:30 p.m.  That is in Courtroom 1,

8          before Judge Kopf.  Any cooperation should be finished by that

9          date, if at all possible.  Once again, February 3rd, at 12:30.

10              Is there anything further we should address?

11                   MS. LIPOVSKY:  No, Your Honor.

12                   MR. BRENNAN:  That's all.

13              THE COURT:  All right.  Mr. Hardesty, on behalf of

14          the Court, I do want to acknowledge what you've done.  Not only

15          have you put yourself in a position to, at least, perhaps get a

16          better sentence, but you've also saved yourself a good deal of

17          grief going through a trial.  You've saved the Government the

18          time and money it takes to bring its witnesses in to present

19          its case, and you've saved the taxpayers the money it takes to

20          bring a jury in to hear it and decide it.  So, whatever else

21          may happen to you, I do -- I commend you for that decision.  I

22          wish you well.

23                   THE DEFENDANT:  Thank you.

24                   THE COURT:  We'll be in recess.

25                        (Recessed at 1:51 p.m.)

1                          C E R T I F I C A T E

2                I, Wendy C. Cutting, court-approved transcriber,

3        certify that the foregoing is an accurate transcript from the

4        official electronic sound recording provided to me of the

5        proceedings made in the above-entitled matter.

6        _____s/Wendy C. Cutting_____        DATE:  _____December 10, 2004_

7        _Signature of Approved Transcriber

8

9                                        - - -